■ In the Matter of S.P.A.C.E. et al., Appellants, v STEVEN HURLEY et al., Respondents. [739 NYS2d 164] —In a proceeding pursuant to CPLR article 78 to review a determination of the Town Board of the Town of Stony Point in the form of a negative declaration pursuant to the State Environmental Quality Review Act (ECL 8-0101 *et seq.*), the petitioners appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Rockland County (Meehan, J.), dated November 17, 2000, as denied the petition and dismissed the proceeding.

Ordered that the judgment is reversed insofar as appealed from, on the law, with costs, the petition is granted, the determination is annulled, and the matter is remitted to the Town of Stony Point Town Board for the preparation of an Environmental Impact Statement and such further proceedings consistent with the State Environmental Quality Review Act as it deems appropriate.

This appeal concerns the proposed construction of a municipal golf course in the Town of Stony Point. The site, a 295-acre parcel of land, is comprised of a large expanse of wooded areas. There are federal wetlands, but no state-regulated wetlands, on the site. The proposed golf course runs over an aquifer, which serves as a drinking-water source for the private wells of several homeowners who live across from the eastern boundary of the proposed site. Among other things, the proposed project entails the removal of 70 acres of forested land.

The Town of Stony Point, as lead agency for the project, performed an environmental assessment of the project, designated as a Type I action, pursuant to SEQRA. In an *"Expanded* Full Environmental Assessment Form" (hereinafter Expanded Full EAF [emphasis supplied]), which called for the assessment of the impact of the project and the magnitude of the impact on, among other things, the land, air, plants, wildlife, water quantity and quality, and public health, only "small to moderate" impacts were identified. None of the impacts were rated as "potential large." Nonetheless, the Expanded Full EAF discussed various mitigation measures that would be undertaken to minimize the effects of, for example, erosion, increase in stormwater runoff, pesticide

contamination, and the elimination of .35 acre of federal wetlands. Following public hearings and comments, and a review of the Expanded Full EAF, the Town issued a negative declaration, determining that the project would have no significant environmental impact, and therefore, the preparation of an Environmental Impact Statement (hereinafter EIS) was not required.

The primary purpose of SEQRA is to "inject environmental considerations directly into governmental decision making" (*Akpan v Koch*, 75 NY2d 561, 569 [internal quotation marks omitted]; *Matter of Coca-Cola Bottling Co. v Board of Estimate*, 72 NY2d 674, 679; *see, Matter of Omni Partners v County of Nassau*, 237 AD2d 440; *Matter of West Branch Conservation Assn. v Planning Bd. of Town of Clarkstown*, 207 AD2d 837, 838). It "insures that agency decision-makers—enlightened by public comment where appropriate—will identify and focus attention on any environmental impact of proposed action, that they will balance those consequences against other relevant social and economic considerations, minimize adverse environmental effects to the maximum extent practicable, and then articulate the basis for their choices" (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 414-415; *see, Matter of West Branch Conservation Assn. v Planning Bd. of Town of Clarkstown, supra*). To this end, SEQRA mandates the preparation of an EIS when a proposed project "may include the potential for at least one significant environmental effect" (*Matter of UPROSE v Power Auth. of State of N.Y.*, 285 AD2d 603, 608; *see, Matter of Silvercup Studios v Power Auth. of State of N.Y.*, 285 AD2d 598; 6 NYCRR 617.7 [a] [1]). The heart of SEQRA is the EIS process (*see, Matter of Jackson v New York State Urban Dev. Corp., supra*; *Matter of West Branch Conservation Assn. v Planning Bd. of Town of Clarkstown, supra*). Because the operative word for triggering an EIS is "may," there is a relatively low threshold for the preparation of an EIS (*see, Matter of UPROSE v Power Auth. of State of N.Y., supra*; *Matter of Omni Partners v County of Nassau, supra*). Moreover, SEQRA regulations provide that a Type I action, such as the proposed action here, carries the presumption that it is likely to have a significant adverse effect on the environment, and may require an EIS (*see,* 6 NYCRR 617.4 [a] [1]).

In this case, a review of the Expanded Full EAF reveals several areas of possible significant environmental impact in connection with the proposed project. These include a potential significant effect on wetlands, wildlife, water quantity and quality, erosion, flooding, and drainage. In identifying various

mitigation measures which would be undertaken to minimize the adverse effects to the environment posed by the project, the Town Board implicitly acknowledged that the effects were significant (*see, Matter of West Branch Conservation Assn. v Planning Bd. of Town of Clarkstown, supra* at 840-841). Therefore, a positive declaration should have been issued and an EIS should have been prepared. Even an "Expanded Full EAF" cannot "legitimately serve as a substitute for an EIS and the attendant analysis and public discussion entailed in a proper SEQRA review" (*Matter of West Branch Conservation Assn. v Planning Bd. of Town of Clarkstown, supra* at 840). To confirm the negative declaration would permit the circumvention of SEQRA's open and comprehensive review process (*see, Matter of Merson v McNally,* 90 NY2d 742). Consequently, we conclude that the Town Board's determination was not made in accordance with lawful procedure and was arbitrary, capricious, and irrational (*see, Akpan v Koch, supra*). Santucci, J.P., Altman, Florio and Goldstein, JJ., concur.